## THE VINELAND NATIONAL BANK

*v.*

## ALLEN R. SHINN, sheriff, et al.

Plaintiff in an execution in a sheriff's hands, on which a sale of lands had been advertised, gave the sheriff, before the sale was made, explicit orders not to sell, and paid his costs and expenses up to that date. Relying on these orders, plaintiff did not attend the sale. Strangers to the record, knowing that the sale had been ordered off by plaintiff, persuaded the sheriff to sell. Without notice to plaintiff, the sheriff sold at nominal prices.—*Held*, that the delivery of the deeds by the sheriff would be enjoined because the sale was a fraud on plaintiff and the execution debtor's other creditors, who were pressing for judgment.

On order to show cause, &c.

A judgment was docketed and entered in Cumberland common pleas by Taylor Brothers against one William G. Marshall, on

the 28th day of October, 1896. Under execution issued on this judgment the sheriff of that county had levied upon two parcels of land, No. 1, situate on Elmer street, and No. 2, on Landis avenue, in Vineland, both belonging to Marshall. The lot No. 1 was encumbered by two mortgages prior in lien to the judgment, one for $1,000 to a building association, and the other for $2,000 to one of the defendants in this bill, the York Manufacturing Company. The lot No. 2 was encumbered by a mortgage of $3,000 to the building association, which was also prior to the judgment.

On the 30th day of October, 1896, Marshall and wife made a· mortgage for $1,100 upon lot No. 2 to the complainant, the Vineland National Bank, which was also subject to the prior lien of the judgment entered two days before.

The two lots had been advertised to be sold and the sale had been adjourned to the 5th day of December, 1896. Marshall was insolvent, and the complainant purchased the Taylor judgment in order to stop the sale, and on the 4th day of December had it assigned to the attorney of record to hold it in trust for the bank. This attorney was conversant with the negotiations in progress, and on the 2d day of December he notified the sheriff that he expected to stop the sale and pay him his costs. The sheriff answered this letter, sending a memorandum of the costs. On the 4th of December the attorney of the plaintiffs in the judgment, as it stood on the face of the record, directed the sheriff not to proceed further with the sale, but to stop it and return the writ unsatisfied, so that the plaintiffs could enforce payment when they desired to do so, and sent the sheriff a check for somewhat less than the sheriff's statement to pay the costs and expenses of the proceedings. No question was made as to the insufficiency of the sum tendered, nor does it in fact appear that it was insufficient to pay all costs up to and including the adjournment, and it also covered some items, as those for statement and commissions, which were not due until sale was actually had. The sheriff received these instructions from the attorney of the plaintiff in the suit on which he had advertised the sale. Relying on the obedience of the sheriff to his orders

for the abandonment of the sale, the plaintiff's attorney did not attend at the time and place advertised. The sheriff, however, did not obey these orders from the plaintiff's attorney, but, in accordance with the demands of Mr. Alvord, the attorney, and Mr. Glatfelter, the president, of the York Manufacturing Company, strangers to the judgment and to the suit on which the sheriff was proceeding, and in the absence of the plaintiff's attorney and without any notice to him, the sheriff made the sale of the lands.

The purchaser of lot No. 1 was the York Manufacturing Company, for $10.

The purchaser of lot No. 2 was the wife of the defendant Marshall, for $72.

Immediately after the sale, and before the delivery of the deed, the Vineland National Bank, the holder of the judgment, filed this bill against the sheriff, the York Manufacturing Company, Alvord, Marshall and his wife, asking answer without oath and that the sheriff be restrained from delivering the deeds &c.

An order to show cause why an injunction should not be issued was allowed, and argument has now been heard on the coming in of this order. The defendants appeared and, by Mr. Alvord, solicitor for all of them, filed separate answers, none of them under oath.

The statute which provides that answer may be required without oath, also provides that "on a motion to grant * * * an injunction, * * * the statements and denials in an answer duly sworn to shall have the same effect as heretofore." *Gen. Stat. p. 376 § 23.* As none of these answers are under oath, they cannot be regarded as evidential on this hearing.

In addition to the answers of the defendants, Mr. Alvord, as attorney for the York Manufacturing Company and others, filed affidavits of Mr. Glatfelter, the president of the York Manufacturing Company, in which that gentleman swears that he attended the sale and purchased lot No. 1 for his company, because he desired to save his company the delay and expense of foreclosure of its mortgage upon that lot, and he did not wish the Taylor writ to be returned unsatisfied, because it would in-

crease the costs and other creditors were pressing Marshall to judgment, which would tend to annoy his company, as they might thus extort money from it to get releases, or compel it to foreclose its mortgage.

Mr. Alvord, the attorney of the York Manufacturing Company, frankly states that he "was very anxious in behalf of his client, the York Manufacturing Company, that said sale should take place, in order that said company might be enabled to obtain title and possession to said lot No. 1." He was of the opinion that to drop the sale and return the plaintiff's writ against Marshall unsatisfied "would operate injuriously upon his client," the York Manufacturing Company, and therefore he demanded that the sheriff go on with the sale, after he knew the plaintiff's attorney had directed that it should not proceed.

The defendant Marshall and his wife, who purchased lot No. 2, for $72, also make affidavits in support of the sale as made by the sheriff.

All the affidavits of the defendants are very full to show that, in the opinion of the defendants, the property was worth no more than it sold for, that they did not know of the assignment of the judgment, and that no injury has come to the complainant, and, on argument, it was particularly insisted that the complainant had no cause to complain as to the sale of lot No. 1, because it had no mortgage lien on this land. It was further insisted that a *lis pendens* notice had been filed, and that an injunction was unnecessary to protect the rights of the complainant.

*Mr. Leverett Newcomb,* for the complainant.

*Mr. Henry S. Alvord,* for the defendants.

GREY, V. C.

There is no dispute in this case that the attorney of the plaintiffs in an execution in a sheriff's hands, on which a sale of lands had been advertised to be held at a certain time and place, gave the sheriff, before the sale was made, explicit orders not to sell, and offered him the fees and costs of the proceedings up to that

date, and indeed beyond, and that the attorney of the plaintiffs, relying upon his expectation that the sheriff would obey these orders, did not attend at the advertised place of sale.

The attorney of other parties, strangers to the record, knowing that the sale had been ordered off as above stated, and that the plaintiffs' attorney was absent, persuaded the sheriff, for the benefit and advantage of these strangers to the suit, to go on with the sale against the express direction of the plaintiffs' attorney. The sheriff, without notice to the plaintiffs' attorney, made the sale, the other parties purchased one lot for $10, and the wife of the defendant in execution purchased the other for $72. These prices are obviously merely nominal, and the effort to maintain this sale, made jointly by the York Manufacturing Company, Mr. Marshall, the defendant in execution, and Mrs. Marshall, his wife, are just as obviously intended to hinder and prevent the application of Marshall's assets to the payment of his debts, as the defendants' affidavits candidly admit that they wanted the sale to be made because other creditors were pressing for judgment, who might, if the sale was postponed, get liens before the title could be gotten out of Marshall's name. Now that this object has been accomplished, the defendant Marshall is foremost in the struggle to protect the title of his wife and of his favored creditor, who have, by this device, become purchasers.

It is of no significance, under the circumstances of this case, whether the defendants knew of the assignment of the judgment or not; they all knew that it was outstanding, and that the writ was active, and that the attorney of the plaintiffs of record ordered the sale not to be made. It was no concern of the defendants for whose benefit as plaintiff these proceedings were had, as they made no effort and had no wish to pay the judgment.

The same plaintiffs' attorney had at all times the control of the proceedings; this all the defendants knew, and they took the steps they did take because they knew that this attorney had ordered the sale to be stopped.

Nor do I think it of essential importance whether the lands obtained to be sold on the plaintiffs' execution against this plaint-

iff's express orders brought a high price or a low one. It does not lie with strangers to the record to assume the control of the proceedings on the execution in the absence of the plaintiffs and against their directions and then to excuse this conduct by insisting that the sale realized the highest possible value. So far as the sheriff was concerned, he had no responsibility in the execution of this writ as to the time when the land should be sold except to the plaintiffs in execution. He was notified by the plaintiffs not to make the sale, and had received from them his costs and expenses to that date. He was thus relieved from the exercise of the discretion ordinarily vested in him as to the adjournment of a sale. His action in consulting strangers to the record and using the writ of execution, and the sale for their benefit and for the purpose of preventing unsecured creditors from obtaining, by judgment, liens on the lands to be sold, was not only a surprise to the plaintiffs in execution, who failed to attend the sale because they had ordered it postponed, but was also a fraud upon the plaintiffs by which they were deprived of the benefits to which they were entitled in exercising their own discretion as to when they would compel a realization to satisfy their judgment. The result of the sheriff's action shows the success of the fraud perpetrated upon the plaintiffs. The York Manufacturing Company, one of the parties, who, through its president and its attorney, procured this sale to be made, became the purchaser of one lot at a nominal sum, and the wife of the defendant in execution became the purchaser of the other lot at a sum which seems to have been purposely placed at an amount sufficient to satisfy the plaintiff's debt and costs on the writ. By procuring this sale to be made in the absence of the complainant, the defendant's wife has been able to obtain the title to lot No 2 under the complainant's judgment as of the date of its entry on the 28th day of October, 1896, and in this way to cut out the mortgage on this lot No. 2, held by the complainant, which was not recorded until the 30th day of October, 1896. The York Manufacturing Company by this process also obtained its object in securing the title to lot No. 1 for a nominal sum, preventing the other creditors who were pressing for judgment from securing any lien on the defendant's property.

I should hesitate, in an ordinary case, to advise the issuing of a restraint against the delivery of deeds under a sale on a *fieri facias* issued out of a court of law; but under the peculiar circumstances of this case, it is not the regular proceeding of a court of law which is sought to be checked. The injunction, if issued, will restrain not the regular, but an improper use of the process of that court against the orders and interests of the parties who are entitled to control it. The action of the sheriff in this case, against the plaintiffs' attorney's orders and in his absence, and after he had paid the costs, in associating himself with strangers to the suit and using the writ for the benefit of the defendant and a favored creditor, and to prevent other creditors from acquiring liens, was, in my judgment, not only in direct defiance of a command which he was bound to obey, but was also such a surprise and fraud upon the rights of the holders of the judgment that this court may and ought to take cognizance of the matter to prevent the success of the scheme. There is an exigency here for which adequate relief can only be had in this court. No report and order of confirmation of this sale would be necessary to put title in these purchasers. The sheriff can at once execute and deliver these deeds upon mere affidavit and approval of a justice of the peace or master, unless restrained by the writ of injunction from this court, and his conduct has indicated an entire willingness to act, not for the interests of the holders of the execution by which he is empowered, but against those interests and for the benefit of strangers to the record.

The facts are not disputed. On the contrary, it is frankly avowed that the York Manufacturing Company and its attorney (who is also the attorney for the defendants in the execution) and the defendants have joined forces for the purpose of procuring the sale to be made for their own benefit, against the plaintiff's orders and just expectation.

It is claimed by the defendants that a notice of *lis pendens* filed secures to the complainant sufficient protection without the use of the writ of injunction. Before the statutory provision which requires the filing of notice of *lis pendens*, in order to charge a purchaser with notice of the suit, the rule was estab-

lished not only that bill must have been filed, but subpœna must also have been served, before persons deriving title from the litigants would be bound by the decree. Since the statute, the additional incident of notice filed is necessary to charge a *bona fide* purchaser or mortgagee from a litigant with the obligations of the decree. *Houghwout* v. *Murphy, 7 C. E. Gr. 547.* When, as in this case, there are non-resident defendants, who can only be brought into court by publication, it is doubtful whether a purchaser from such a defendant before the expiration of the period of publication, would be affected by the decree. An assignee who took his assignment after bill filed, but before subpœna served, has been held to be a necessary party. *Powell* v. *Wright, 7 Beav. 444.* It is only at the conclusion of the period of publication, and on proof of observance of the directions of the order, that the non-resident defendant is in court, as in case of subpœna served. The contracts of sale under the execution in this case are still executory, and the only complete remedy which the complainant can have is to prevent their further execution, for if title be permitted to be made under them, the complainant may be compelled to bring several suits to secure its rights, which can here and now be settled in one.

I think, under the exigency here shown, and on the ground of the fraud and surprise sprung upon the complainant, and the misconduct of the sheriff in using the plaintiffs' writ against the attorney's orders, I ought to advise that the order to show cause be made absolute and that injunction should issue restraining the delivery of any deeds by the sheriff under this sale. I will so advise.